**Charles G. PELLER, Jr.**

v.

**SELECTIVE SERVICE LOCAL BOARD NO. 65, VALPARAISO, INDIANA and Wayne Rhodes, State Director, Indiana Selective Service.**

**Civ. No. 70 H 24.**

United States District Court,
N. D. Indiana,
Hammond Division.
March 19, 1970.

R. Dennis Hoover, Valparaiso, Ind., for plaintiff.

Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., J. Frank Kimbrough, Asst. U. S. Atty., Hammond, Ind., for defendants.

## OPINION

BEAMER, District Judge.

This is an action for a declaratory judgment to the effect that plaintiff is entitled to a I–S classification under the Military Selective Service Act of 1967, 50 App.U.S.C. § 451 et seq., and for a preliminary injunction prohibiting his induction until the primary action is disposed of. The facts are undisputed.

Plaintiff enrolled as a full-time student at Purdue University in September, 1966. After registering with the Selec-

tive Service System, he was classified II–S. At the beginning of his sophomore year, he contracted mononucleosis and was forced to reduce his course load. Nonetheless, he remained in good standing with the University and continued to attend classes. In the spring of 1968, he developed a condition of severe anaclitic depression, which eventually required psychiatric treatment, and fell further behind.

In the fall of 1968, Local Board No. 65 discovered that plaintiff was still classified as a second-semester sophomore. On October 22, 1968, it reclassified him I–A. The apparent basis for the reclassification was 32 CFR § 1622.-25(c), which provides, in substance, that an undergraduate has to complete twenty-five per cent of his credit hours each year to retain his II–S classification. Plaintiff appealed, but the local board's decision was upheld.

Plaintiff was examined and found fit for service, and on July 15, 1969, the local board ordered him to report for induction on August 7. At plaintiff's request, his induction date was postponed until August 31, to permit a reconsideration of his fitness for service in light of his medical history.

On July 30, 1969, the State Director sent the following letter to the local board:

After reviewing the file of the above-named registrant, we cannot determine whether or not he should have been reclassified from Class II–S to I–A.

We suggest that the local board request the registrant to furnish them with a transcript of his school record. When it is reviewed the local board should also take into consideration the fact that he had mononucleosis during one school year.

If the local board determines that the registrant qualifies for a II–S deferment, the State Director of Selective Service acting under the provisions of Section 1625.3 of the Selective Service Regulations hereby au-

thorizes your local board to reopen and consider anew the classification of this registrant, canceling the order to report for induction.

In any event he should not be ordered to report for induction again until the Surgeon General makes a determination.

On August 15, plaintiff submitted the transcript referred to by the State Director, along with an explanatory letter from his psychiatrist, but the local board decided not to reopen his classification. On August 21, plaintiff was advised by the Surgeon General that he had again been found medically qualified for induction. On September 12, the local board sent him a letter ordering him to report for induction on October 9. On September 24, however, the board sent him another letter postponing his induction "until further notice."

Meanwhile, plaintiff had begun the fall semester at Purdue, and the local board was duly notified of his student status. On November 18, plaintiff's file was again reviewed, and the local board again refused to reopen his classification.

On December 9, 1969, plaintiff's attorney advised the local board that plaintiff was satisfactorily pursuing a full-time course of instruction at Purdue, and asked that he be classified I–S. On December 16, the local board decided that plaintiff should be permitted to complete the fall semester and officially postponed his induction until January 31. On December 18, it sent a letter to plaintiff's attorney stating that plaintiff was not eligible for Class I–S because he was not a full-time student on July 15, 1969, the date of his original order to report for induction.

On January 13, 1970, the local board sent plaintiff a letter ordering him to report for induction on February 5, 1970. This action was filed on February 3; and on February 4 the Court issued a temporary restraining order enjoining defendants from inducting plaintiff before February 14, 1970. At all times relevant to this action, plaintiff has been regarded by Purdue University as a full-time student in good standing.

The present proceeding is governed by 50 App. U.S.C. § 460(b) (3), which provides that:

No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title [section 462 of this Appendix], after the registrant has responded either affirmatively or negatively to an order to report for induction * * *.

Whether this proceeding is regarded as an action for an injunction or a declaratory judgment action, the process of determining whether or not relief is warranted would inevitably involve "judicial review" of plaintiff's classification, and thus fall within the statutory prohibition.

Recognizing that fact, plaintiff relies on Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), where the Supreme Court held that despite the broad language of the statute, preinduction review is proper in extreme cases, where the conduct of the local board is "blatantly lawless" or constitutes a clear departure from statutory mandate. Plaintiff contends that this case satisfies that test because the local board clearly violated Section 1625.3(b) of the Selective Service Regulations.

That section provides as follows:

The local board shall reopen and consider anew the classification of a registrant to whom it has mailed an Order to Report for Induction (SSS Form No. 252) whenever facts are presented to the local board which established the registrant's eligibility for classification into Class I–S because he is satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning.

It should be read in conjunction with Section 1622.15(b) of the Regulations, which provides that:

> In Class I–S shall be placed any registrant who while satisfactorily pursuing a full-time course of instruction at a college, university or similar institution of learning and during his academic year at such institution is ordered to report for induction.
> * * *

Both of these regulations should be read in the light of 50 App.U.S.C. § 456(i)(2), the statute that authorizes I–S deferments:

> Any person who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution is ordered to report for induction under this title, shall, upon the facts being presented to the local board, be deferred (A) until the end of such [sic.] academic year, or (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier * * *.

Plaintiff contends that Section 1625.-3(b) was violated on two separate occasions. The first violation allegedly occurred in the summer of 1969, after the issuance of plaintiff's order to report for induction, when his local board received SSS Form 109 from the Purdue University Calumet Extension, certifying that plaintiff was pursuing a full-time course of instruction.[1] Plaintiff contends that at that point the local board was required to reopen his I–A classification on its own motion and reclassify him I–S until September, 1969.

Plaintiff relies heavily on Walsh v. Local Board No. 10, 305 F.Supp. 1274 (S.D.N.Y.1969), a case involving facts virtually identical to those now at issue. There the Court observed that under Section 1622.15(b) of the Regulations, students ordered to report for induction during the "academic year" are entitled to a I–S classification. Turning to the regulations governing II–S classifications, the judge noted that Section 1622.24(b) provides that "In determining eligibility for deferment in Class II–S a student's 'academic year' shall include the 12-month period following the beginning of his course of study." Finding that "neither the statute nor the regulations contain the slightest suggestion that 'academic year' is to be defined differently for a I–S(C) classification than for a II–S classification," the Court concluded that even though the plaintiff was ordered to report for induction during the summer, he still received his orders during the "academic year", and was therefore entitled to a I–S classification until the following September.

The obvious keystone of the Walsh decision was the Court's finding that the definition of "academic year" in Section 1622.25(b) could properly apply for the purpose of determining the registrant's right to a I–S classification. This Court disagrees. The definition is expressly limited to cases involving II–S classifications, and appears in a regulation that deals exclusively with II–S deferments. Its application for I–S purposes cannot be justified under any rational rule of construction.

This Court is unable to find any policy justification for a twelve-month academic year in I–S cases. The extended academic year is essential to the system of undergraduate deferments since students making satisfactory progress might otherwise be drafted during their summer vacations. However, once a registrant forfeits his II–S classification and receives his order to report for induction, there can be no good reason for extending his deferment through the summer.[2]

---

1. After receiving that form, the board sent plaintiff a letter asking if he was then attending summer school. Plaintiff replied that he was not.

2. Since plaintiff was not attending summer school when he received his order to report for induction, it is unnecessary to reach the question of whether or not registrants in that position would be entitled to a I–S deferment.

■ That fact is reflected in the language of Section 1622.15(b). In *Walsh*, the Court took the words "academic year" out of context. What the regulation actually says is that a registrant is entitled to a I–S classification if ordered to report for induction "during *his* academic year *at such institution* [emphasis added]." Plaintiff was not attending classes at any institution when he received his induction order, and he had no intention of doing so until the following September. Under those circumstances, the board's failure to reopen his classification was wholly proper.

■ Plaintiff claims that a second and wholly distinct violation occurred in the fall of 1969. His basic argument is that since he was able to escape induction until the beginning of a new school year, the board should have reopened his classification in September and reclassified him I–S until the following June.

Plaintiff admits that under the regulations a registrant is not entitled to a I–S unless he was *ordered to report for induction* during his academic year. However, he contends that the phrase "ordered to report for induction" refers to a status rather than an event. Under that reading, a registrant would be "ordered to report for induction" during the entire period between the issuance of SSS Form 252 (Order to Report for Induction) and the date of his actual induction.[3]

The argument is ingenious, but unacceptable. The basic reason for the I–S deferment is that students who lost their II–S classification would otherwise be forced to choose between interrupting their education for an undetermined period while waiting for a draft call that might never come, and investing considerable time and money in classes that they might not be allowed to complete.

If the registrant receives his order to report for induction before classes begin, that justification no longer exists. The period between issuance of the order and the date of induction is ordinarily short, and any postponements are usually at the instance of the registrant. The uncertainty is gone. The registrant knows before he ever enrolls that induction is imminent. If he goes ahead and enrolls anyway, any resulting loss is his own fault. The I–S deferment is basically a relief measure, and the regulations should not be interpreted in such a way as to make it available when relief is uncalled for.

Moreover, the interpretation suggested by plaintiff would create a serious administrative burden for the Selective Service System. It would place an immense premium on stalling tactics for anyone who receives his induction order during the summer. Even a drop-out could gain a year's reprieve if he could stave off the actual day of induction until he was able to re-enter classes somewhere. The possibilities for fraud are obvious; and even in the absence of fraud, the inevitable flood of postponement requests could impose an intolerable burden on the system.

In short, the Court is of the opinion that the local board's refusal to grant plaintiff a I–S deferment was proper. For that reason, the Court lacks jurisdiction to grant the relief requested. However, the Court expresses no opinion concerning the propriety of reclassifying a registrant in plaintiff's position from II–S to I–A.

This opinion incorporates the Court's findings of fact and conclusions of law

3. It should perhaps be noted that despite numerous letters, plaintiff received only one order to report for induction within the meaning of the Regulations. 32 C.F. R. § 1632.2(d) expressly provides that postponements will not invalidate an induction order. 32 C.F.R. § 1632.2(d).